UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER REED,<br><br>　　　　Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Respondent. | Case No. CV 10-602-E-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Now pending before the Court is Petitioner Christopher Reed's Petition for Review (Dkt. 1), filed December 17, 2010, seeking review of the Social Security Administration's final decision to deny his disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

　　　　On October 30, 2007, Christopher M. Reed ("Petitioner") applied for Social Security Disability Insurance Benefits and SSI disability benefits, alleging a disability onset date of October 20, 2005, when he was 31 years old. (AR 125-139). Petitioner's claim was initially denied and, again, denied on reconsideration. (AR 71-84). Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 85-86). On September 3, 2009, ALJ Robin L. Henrie held a hearing at which time Petitioner, represented by attorney Reed Larsen, appeared and testified. (AR 24-70). A vocational expert, Mr. Hurst, also appeared and testified.

**MEMORANDUM DECISION AND ORDER - 1**

(AR 24-70).  At the time of the hearing, Petitioner had past relevant work as a construction worker.  (AR 21).

On October 23, 2009, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  (AR 10-23).  Petitioner timely requested review from the Appeals Council on December 9, 2009 (AR 8).  The Appeals Council then denied review on October 26, 2010 (AR 1-4) rendering the ALJ's decision the Commissioner's final decision.  Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits.  Petitioner contends the ALJ erred by finding that the Petitioner could perform other jobs at step five.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975);

**MEMORANDUM DECISION AND ORDER - 2**

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA since October 20, 2005, the alleged onset date. (AR 15).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of

**MEMORANDUM DECISION AND ORDER - 4**

impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: "herniated discs in the cervical spine; brachial plexopathy due to bilateral thoracic outlet syndrome; right shoulder injury; and adjustment disorder with anxiety and depressed mood." (AR 15).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual

functional capacity to perform the full range of unskilled sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a) with express limitations.[1] (AR 16-17). The ALJ also determined that Petitioner could not perform his past relevant work. (AR 21).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show

---

[1] These limitations state such work can not require:
- Lifting more than 5-7 pounds at a time (but most use both hands/arms);
- Lifting and carrying lighter articles weighing more than 3-5 pounds on an occasional basis which means from very little to 1/3 of the day (the above limitations suggest minimal lifting and/or carrying);
- Sitting more than 6 total hour in an 8-hour day and standing/walking more than 2 hours in an 8-hour day (with the option to alternate sitting and standing/walking as needed at 15 minute intervals; i.e. brief postural changes will be needed as frequently as every 15 minutes);
- Bending, stooping, twisting, squatting, kneeling, crawling, crouching and stair climbing more than "less than occasional;"
- Working in other than a clean, controlled environment, i.e., few allergens on the job
- Work at more than a low stress level, which means;
    - ·A low production level;
    - ·Essentially no working with the general public directly, but phone contact with people is acceptable;
    - ·Only minimal contact with supervisors and co-workers on the job, but still having the ability to respond appropriately to supervision, co-workers, work situation, but no crowds of co-workers;
- Work at more than a low concentration level, which means ability to be alert and attentive to (and adequately perform) only unskilled work tasks;
- Work at more than a low memory level, which means:
    - ·The ability to understand, remember and carry out only simple work instructions (simple means the claimant would be functioning at GED levels or only:
        - ·Reading - 3;
        - ·Math - 2;
        - ·Language - 2;
    - ·The ability to remember and deal with only minimal changes in work instructions from week to week;
    - ·The ability to remember and use appropriate judgment in making only simple work-related decisions;
- Reaching of the right and left upper extremities more than stomach or desk height, e.g., no work at chest height;
- No fine hearing duties due to hearing loss.

(AR 16-17).

**MEMORANDUM DECISION AND ORDER - 6**

that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that there are jobs that exist in the national economy that the claimant can perform.  (AR 22).

**B.     Analysis**

       **1.     ALJ's Finding Regarding Jobs that Exist in the National Economy**

Petitioner contends that the record is void of any evidence that he is capable of performing other work that exists in the national economy.  At step five in the sequential process, the Commissioner has the burden of demonstrating that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  The Commissioner can meet this burden through the testimony of a vocational expert (VE) or by reference to the Medical Vocational Guidelines.  *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).  The ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy.  *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  At the hearing, the ALJ poses hypothetical questions to the vocational expert that "set out all of the claimant"s impairments" for the vocational expert's consideration.  *Id.* (quoting *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)).  The ALJ's depiction of the claimant's disability must be accurate, detailed, and

**MEMORANDUM DECISION AND ORDER - 7**

supported by the medical record. *Id*. It is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record;" unsupported limitations may be excluded. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

At the hearing in this matter, the ALJ posed two hypotheticals to the VE. (AR 61-67). In the first hypothetical, the ALJ stated:

> Assume an individual with the ability to perform only sedentary unskilled jobs and it would be a limited range of sedentary unskilled. For example, the lifting would be in the range of five to seven pounds at a time, utilizing both the right and the left upper extremities. And the lifting and carrying would have to be of lighter articles. Those articles would weigh in the range of three to five pounds a ta time, but only on an occasional basis. That would be from very little up to one-third of the day. So this is a situation where we have minimal lifting and carrying on the job. Assume that he could be seated for six hours and could be on his feet standing for two hours. However, he would require a 15-minute sit/stand option. What that means it that when needed, he could exercise the option to make brief, postural changes every 15 minutes. But assume he could still log the total hours of six seated and two on his feet. Now, the following postures and activities would all be less than occasional. These are probably already assumed by sedentary work, but just to be sure, bending, stooping, twisting, squatting all would be less than occasional. Kneeling, crawling, crouching all would be less than occasional. So that's no work on the floor. Stair climbing would be less than occasional. A few steps would be okay, but no flights of stairs. Overhead lifting and reaching would be precluded, and the reaching, handling and fingering would be occasional, which would be very little to one-third of the day . . . the reaching, handling, and fingering would have to be what I call desk level or stomach height. So basically if he's sitting in front of a desk or a bench, he could use his hands and arms at that level. No elevation up to like chest height and above. Now, the work would also have to be in a clean, climate-controlled environment with few allergens on the job. On the nonexertional side of things, the depression and the pain would reduce him to unskilled work at the low stress level. Low stress, in this case, has three elements. Number one, a low

**MEMORANDUM DECISION AND ORDER - 8**

> production job would be less stressful so that if you were to divide SGA jobs into low, average, and high production, this would be the low category. The second element of low stress would be essentially no working with the general public, but that's only face to face. He could work on the phone with the general public for the first hypothetical. And lastly, the third element of low stress would be minimal contact with others, including supervisors and coworkers. In particular, no crowds around him. That would be stressful. His pain and other limitations would reduce his concentration to low concentration levels of work, meaning he could be alert and attentive but only to unskilled tasks. Pain and the other symptoms can affect your memory level, so we'll reduce him to the ability to understand, remember, and carry out only simple work instructions. Simple meaning reasoning three, math two, language two. He could function at those levels but no more than that. Also he would have the ability to understand and remember and deal with only minimal changes in the work instructions from week to week. And the ability to remember and use appropriate judgment and making only simple, work-related decisions. . . [and] assume right and left are equally problematic.

(AR 61-63). Following this hypothetical, the VE testified as to two jobs, surveillance systems monitor and callout operator, that existed in significant numbers in the national economy. He then reduced the number of jobs that would exist by 30% each to account for all the limitations stated in the hypothetical. For example, the hypothetical stated a language level of two but the jobs both called for language levels of three. Based on this discrepancy between the job description and the hypothetical posed, the vocational expert reduced the number of jobs that would exist by 5% and 10%, respectively. (AR 64-65).

In the next hypothetical presented, the ALJ added the following symptoms:

> Significant low back pain, knee pain, hip pain, right and left shoulder pain, neck pain, upper extremity pain, numbness and tingling in the lower extremities and the upper extremities, significant fatigue and low energy causing excessive recumbency on the job, more than would be allowed on breaks and lunch, reduced concentration, persistence, and pace, irritability, tremors

**MEMORANDUM DECISION AND ORDER - 9**

> of the body, in particular the upper extremities, not to mention the
> neuritis pain in the face and head and other symptoms as testified
> to such that from that period of time, 10 of '05 to present, he would
> either have had productivity problems on the job or reliability
> problems on the job. Reliability would mean three to four days of
> absence a month, and productivity would mean about 15 to 20
> percent below average performance a month.

(AR 66). The VE testified that this hypothetical would rule out all work. (AR 66).

      The Court has carefully considered the ALJ's decision and the supporting record, particularly in the context of the differing hypotheticals posed to the vocational expert and the implications each had for the Petitioner. In her decision, the ALJ first made a reasonable assessment of Petitioner's testimony. (AR 20-21). The ALJ largely found Petitioner to be credible and that a majority of the medical evidence corroborated his testimony. (AR 19-20). However, where the medical evidence did not support Petitioner's testimony, the ALJ gave less weight to Petitioner's statements. (AR 19). The ALJ also made a fair determination of the weight to be given to the various medical opinions, including treating and agency reviewing physicians. (AR 20-21). Where their opinions did not consider all of Petitioner's injuries or conflicted with the medical evidence, she thoughtfully assessed the differences and gave their opinions less weight. (AR 21). Based on this thorough discussion of Petitioner's testimony and the medical evidence and opinions, the ALJ made a detailed residual functional capacity (RFC) finding, which included a number of limitations supported by substantial evidence. (AR 16-17). To that point, her adjudicative work largely favored Petitioner's position. However, she was required to make additional judgments about the evidence. After noting that Petitioner could not return to his past work, she was required to consider at step five of the analysis whether or not there was other work Petitioner could perform. The ALJ decided that the answer to this question

**MEMORANDUM DECISION AND ORDER - 10**

was yes.  She did so in the same careful fashion that she dealt with the other evidence in the record, and she relied in particular upon the VE's testimony in response to the first hypothetical posed at the hearing.  (AR 61-63).  The first hypothetical mirrors the residual functional capacity (RFC) finding made by the ALJ in her decision. (AR 16-17).  It is proper for the ALJ to limit her hypothetical to those limitations that are supported by substantial evidence.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  Because the ALJ's RFC finding is consistent with the first hypothetical posed to the VE during the hearing, she did not error in relying on the VE's testimony regarding jobs available in the national economy in making her finding at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ may take administrative notice of any reliable job information, including information provided by a VE).   While the ALJ did pose a second hypothetical to the VE, which included limitations as to an individual's reliability and productivity, the ALJ ultimately made a determination as to Petitioner's RFC that was not as limited as the person described in that hypothetical and accordingly, she did not rely on that portion of the VE's testimony.[2]   The ALJ's decision not to include these additional limitations in the RFC finding is supported by substantial evidence; accordingly, even though she could also reasonably have decided differently, the Court cannot second guess the ALJ's judgment and substitute its own. The ALJ's hypothetical posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence and the VE testified that there are jobs that could

---

[2]      Had the ALJ reached a different conclusion as to Petitioner's RFC that more closely fit her second hypothetical to the VE, then she would have been entirely justified in relying upon that hypothetical and the VE's response to it (even if the Government were to object) for the same reasons that support her reliance upon the first hypothetical in this record.

**MEMORANDUM DECISION AND ORDER - 11**

be performed in response to the hypothetical; accordingly, the ALJ's reliance on the VE's testimony and ultimate decision of non-disability were proper. *See Bayliss*, 427 F.3d at 1217.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support her well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence.  Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

**MEMORANDUM DECISION AND ORDER - 12**



DATED:  **March 19, 2012**

 

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**